OPINION OF THE COURT
W. Patrick Falvey, J.
The petitioners, pursuant to CPLR article 78, petition the court for an order adjudging and decreeing that the Town Board of the Town of Tyre’s negative declaration of October 1, 2015 be annulled and vacated and that all other resolutions, agreements or other actions based on or resulting from the negative declaration, including Local Law No. 5 (2015) of the Town of Tyre, the site plan resolution, the planned unit development district and development plan resolution and the community mitigation plan (CMP) be annulled and vacated. Petitioners also seek a judgment adjudging and decreeing that the Town Board of the Town of Tyre must require respondents Lago Resort & Casino, LLC, Wilpac Holdings, LLC, Wilmot Gaming, LLC, Wilpac Funding, LLC, Thoms C. Wilmot, Sr., M. Brent Stevens, and Wilmorite, Inc. (Lago) to prepare an environmental impact statement (EIS) regarding the casino project before issuing any approvals or taking any other action with respect to the proposed Lago Resort and Casino project (casino project or project). Petitioners seek an injunction, enjoining the respondents from taking any action to enforce the negative declaration and the related resolutions or taking any other actions based on the negative declaration, including construction of the casino project, with such other and further relief as the court may seem just, proper and equitable. Petitioners assert that the Town failed in many different ways to comply with the Environmental Conservation Law and the New York State Environmental Quality Review Act (SEQRA) regulations in issuing its October 1, 2015 negative declaration to the extent *667 that the Town exceeded its lawful authority and jurisdiction, violated lawful procedure and made an error of law. Petitioners further state that the Town’s determination to issue the negative declaration was arbitrary, capricious, and an abuse of discretion. (CPLR 7803.)
The respondents have each answered the petition, asserting that the Town complied with SEQRA and asking the court to deny the petition.
This is the second article 78 proceeding before this court regarding the SEQRA process for the casino project by some of the within petitioners (Sup Ct, Seneca County, index No. 48435). Following this court’s decision in the first proceeding, upholding the Town’s SEQRA determination to issue a negative declaration for a Type I action, upon completion of the full environmental assessment form (FEAF or EAF), petitioners successfully appealed (Matter of Dawley v Whitetail 414, LLC, 130 AD3d 1570 [4th Dept 2015]). The Fourth Department concluded that the Town erred in failing to make a written reasoned elaboration in issuing the June 12, 2014 negative declaration (6 NYCRR 617.7 [b] [4]) and reversed this court’s judgment. The respondents therein sought and obtained leave to appeal to the Court of Appeals, and that appeal is pending as of this court’s consideration of the instant action.
Following receipt of the Fourth Department’s decision, the Town initially planned to make a new resolution to issue a negative declaration, which would include the written reasoned elaboration the Fourth Department found was missing at the time the 2014 negative declaration was issued (McGreevy aff at 3-4). However, upon receipt of submissions from petitioners’ attorneys, including an initial 23-page submission with 18 exhibits dated July 14, 2015 and later submissions, the Town determined that it would undertake a second “full-scale” SEQRA review. (McGreevy aff at 4.) At its July 16, 2015 meeting, the Town, in commencing that review, scheduled a public comment period to run through August 10, 2015 seeking submission by the public of comments about “any potential adverse environmental impacts” (record at 3787, 9219). It is this second SEQRA review that is presently before the court.
A court in reviewing SEQRA determinations in an article 78 proceeding is limited to considering “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion.” (CPLR 7803 [3].) However, the court must also be *668 mindful that “SEQRA’s procedural mechanisms mandate strict compliance, and anything less will result in annulment of the lead agency’s determination of significance.” (Dawley, 130 AD3d at 1571 [citations omitted].)
First and Second Causes of Action
Petitioners assert that the Town Board members, especially Supervisor McGreevy, issued the negative declaration due to their bias towards the casino project. Petitioners point to: statements made by McGreevy soon after the Dawley decision was issued by the Fourth Department to the effect that the Town would be correcting a technical oversight; that the Town wanted to see the project move forward to completion; an email from McGreevy to Wilmot’s attorney Shawn Griffin from November 2013 expressing support for the casino; a December 2013 email from Lago’s engineer, BME Associates with attached time line for approvals, which references “a negative declaration, hopefully”; Lago’s counsel submitting proposed resolutions to McGreevy, who welcomed such direction from Lago to further the development, including a suggestion to McGreevy to structure a meeting to avoid the Open Meetings Law; and the Town’s moving the SEQRA process ahead so quickly.
Respondents assert that the Town Board members did not commit any ethics violations in completing the SEQRA review.
Petitioners have failed to show any action on the part of Supervisor McGreevy or of any of the other Town Board members that “would provide a basis for setting aside the action of the town board.” (Webster Assoc. v Town of Webster, 59 NY2d 220, 227 [1983]; Matter of Laird v Town of Montezuma, 191 AD2d 986 [4th Dept 1993].) McGreevy’s public statements, correspondence with respondents during the SEQRA process, and the speed by which this second SEQRA process was completed do not amount to bias as prohibited by article 18 of the General Municipal Law. And, as respondents point out, McGreevy’s one vote, even if tainted, did not affect the outcome, since the measure would have passed without his vote. The speed by which the Town completed the SEQRA process is insufficient proof of bias.
The first and second causes of action are therefore denied.
Third Cause of Action
Petitioners assert that the scope and magnitude of the project make an EIS mandatory. While there is a very low threshold to *669 require an EIS in a Type I action, there is no hard-line rule requiring an EIS for a certain sized project.
The third cause of action is therefore denied.
Fourth Cause of Action
The fourth cause of action alleges that the Town applied the wrong legal standard in its SEQRA analysis. Petitioners state that the Town improperly considered whether the casino will have a significant adverse impact, when the Town should have considered whether it may have such an impact. Petitioners assert that if the Town used the correct standard, it would have required an EIS, and would not have issued the negative declaration.
Environmental Conservation Law § 8-0109 (2) requires that an EIS must be prepared when the action that an agency or applicant proposes “may have a significant effect on the environment.”
The DEC regulation “Determining significance,” 6 NYCRR 617.7 (a), provides:
“The lead agency must determine the significance of any Type I or Unlisted action in writing in accordance with this section.
“(1) To require an EIS for a proposed action, the lead agency must determine that the action may include the potential for at least one significant adverse environmental impact.
“(2) To determine that an EIS will not be required for an action, the lead agency must determine either that there will be no adverse environmental impacts or that the identified adverse environmental impacts will not be significant.”[1]
Thus, by its terms this regulation requires a “may” standard if the agency determines that an EIS is required, and a “will be no” or “will not be” standard if the agency determines an EIS is not required. The regulation then breaks down the lead agency’s task in making its determination of significance by requiring the lead agency to review the EAF “and any other supporting information to identify the relevant areas of environmental concern” (6 NYCRR 617.7 [b] [2]) compared against the criteria set forth in 6 NYCRR 617.7 (c). The lead *670 agency must “thoroughly analyze the identified relevant areas of environmental concern to determine if the action may have a significant adverse impact on the environment; and . . . set forth its determination of significance in a written form containing a reasoned elaboration and providing reference to any supporting documentation.” (6 NYCRR 617.7 [b] [3], [4].)
The regulation “criteria for determining significance” set forth in 6 NYCRR 617.7 (c) (1) notes that the criteria listed therein “are considered indicators of significant adverse impacts on the environment.”
The court finds that the Town did not apply an incorrect legal standard in its review. The Town’s review complied with 6 NYCRR 617.7 (a) (2). (See Matter of Frigault v Town of Richfield Planning Bd., 107 AD3d 1347 [3d Dept 2013].)
The fourth cause of action is therefore denied.
Fifth, Sixth and Seventh Causes of Action
Petitioners ask the court to determine that the Town failed to take the requisite “hard look” at the mitigation measures that Lago incorporated into the project, including off-site road improvements, sewer system upgrades and water upgrades. Petitioners assert that the Town improperly relied on Lago’s proposed mitigation measures, including those stated in the community mitigation plan, in issuing the negative declaration. The petitioners argue that the mitigation measures cited in the negative declaration do not “clearly negate the continued potentiality of the adverse effects of the proposed action.” (Matter of Merson v McNally, 90 NY2d 742, 754 [1997].) And, since the CMP was not accepted until after the negative declaration was issued, petitioners argue that reliance on the CMP amounts to an improper conditioned negative declaration, which is not allowed for SEQRA Type I actions.
The court notes that the FEAF part 3 instructs the lead agency in evaluating the magnitude and importance of project impacts to “assess the importance of the impact” and that “the assessment should take into consideration any design element or project changes.”
“Judicial review of a lead agency’s negative declaration is restricted to ‘whether the agency identified the relevant areas of environmental concern, took a “hard look” at them, and made a “reasoned elaboration” of the basis for its determination.’ (Matter of Jackson v New York State Urban Dev. Corp., 67 *671 NY2d 400, 417 [1986]; see Matter of Merson v McNally, 90 NY2d 742, 751 [1997])” (Matter of New York City Coalition to End Lead Poisoning v Vallone, 100 NY2d 337, 348 [2003]).
The Town in undertaking its 2015 SEQRA review identified the following potential project impacts in part 2 of the FEAF that may be moderate to large: impact on land (construction more than one year); impact on surface water (new water body); impact on agricultural resources (soil groups 1 through 4 may be impacted, increased development potential pressure on farmland); impact on transportation (projected traffic increase may exceed capacity of existing roads, construction of paved parking area for 500 or more vehicles, change in pattern of movement of people or goods); impact on energy (new energy to serve a commercial or industrial use, more than 2,500 mwhs per year of electricity, heating and cooling more than 100,000 square feet); impact on odor and light; consistency with community plans (change in density of development not supported by existing infrastructure, or distant from infrastructure); and consistency with community character (demand for additional community services, inconsistent with predominant architectural scale and character).
The Town then as required by the instructions for FEAF part 3 assessed each impact that it had identified as moderate or large and assessed each element of the proposed action where the Town found a “need to explain why a particular element of the proposed action will not, or may, result in a significant adverse environmental impact.” (FEAF part 3 instructions.)
There are essentially four parts to the Town’s part 3 responsibilities: (1) identify the impact based on the part 2 responses; (2) assess its importance based on geographic scope, duration, probability of it occurring, number of people affected, and any additional environmental consequences if the impact occurs; (3) consider any design element or project changes regarding that impact; and (4) state reasons why the impact may/will not result in a significant adverse environmental impact. (See FEAF part 3 instructions.)
The Town in doing its part 3 evaluations was required to, and did consider project design changes that were developed by Lago in response to questions and concerns raised in the SEQRA process by involved agencies such as the Department of Transportation (DOT) and interested parties such as *672 petitioners herein. (See 6 NYCRR 617.3 [a].) The Town then made a reasoned elaboration for each such impact and element (see e.g. record at 6206-6218 [regarding transportation]).
The issues regarding obtaining land dedication for off-site road improvements and whether Lago will be able to “construct the improvement on the Petro site” (DOT, Apr. 23, 2014 correspondence, record at 4028) are not issues of environmental concern, per se, but are issues addressed to the permitting requirements of the Department of Transportation. The cases of H.O.M.E.S. v New York State Urban Dev. Corp. (69 AD2d 222 [4th Dept 1979]) and United States v 27.09 Acres of Land, More or Less, Situated in Town of Harrison & Town of N. Castle, County of Westchester, State of N.Y. (760 F Supp 345 [SD NY 1991]) are distinguishable. In H.O.M.E.S. the agency did not require or review any traffic and parking mitigation plans, or traffic studies before issuing a negative declaration for the building of a new covered stadium at Syracuse University, instead only “vaguely recognized their existence and relied upon general assurances that after the problems developed the University and City of Syracuse would adequately mitigate them by some unspecified appropriate action.” (69 AD2d at 232.) Here, a traffic impact study (TIS) was done, and following comments from the DOT regarding the TIS, including the DOT’s asking for additional information regarding Amish road use, and respondent’s reply, the DOT by letter dated September 29, 2015 stated that they had reviewed the supplemental information that was provided, found it to be satisfactory and stated that they would not require any further documentation nor analysis for the TIS (record at 5718). Lago, after completion of its TIS, with input from the DOT and Thruway Authority, created a traffic mitigation plan with very specific actions to be taken as part of that plan, including adding another toll booth at the Thruway, adding turning lanes to the various highways in the vicinity, and adding wider shoulders on Route 414’s bridge over the Thruway.
U.S. v 27.09 Acres of Land is distinguishable because it is a federal case involving federal laws and regulations. Thus, to the extent that the court there held that the federal environmental review undertaken under the National Environmental Policy Act process (42 USC § 4332 [2] [C])[2] improperly relied on traffic mitigation measures that lacked state approval, this *673 court concludes it is not bound by the ruling therein. Under SEQRA, it was not error for the Town to complete the SEQRA process before the Thruway Authority and DOT issued permits. In fact, it would be a violation of SEQRA for the DOT or the Thruway Authority to issue the necessary permits before the SEQRA process is completed. (6 NYCRR 617.3 [a]; New York State Department of Environmental Conservation, Division of Environmental Permits, The SEQR Handbook at 66-67 [3d ed 2010].)
As for the CMP, the court concludes that this document does not amount to rendering the negative declaration conditional. The Town reviewed the components of the proposed CMP at its September 24, 2015 meeting, before the negative declaration was issued on October 1, 2015. The CMP is a requirement for a casino, under the Upstate New York Gaming Economic Development Act of 2013 (Gaming Act) (Racing, Pari-Mutuel Wagering and Breeding Law § 1316 [6]). Here, the CMP includes mitigation measures in some cases addressed to both SEQRA and the Gaming Act, such as payments to the Fire Department for fire protection benefits (Racing, Pari-Mutuel Wagering and Breeding Law § 1316 [7]; FEAF, part 2, para 18 [see record at 6154]) and community issues that are not SEQRA specific, but instead are required to be addressed under the Gaming Act, such as problem gambling (Racing, PariMutuel Wagering and Breeding Law § 1316 [5]). The CMP properly commits Lago to provide additional funding as part of its project proposal to address community issues that the Gaming Act requires to be mitigated. The Gaming Act does not require the Town to take a “hard look” at the mitigation measures included in the CMP. To the extent that mitigation measures in the CMP also involve SEQRA issues, such issues were properly addressed by the Town and given the required “hard look” during the SEQRA process.
The fifth, sixth and seventh causes of action are therefore denied.
Eighth Cause of Action
The court concludes that the Town did not improperly segment its SEQRA review. The court finds that the Town properly considered construction impacts as part of its review. (See e.g. FEAF, part 2, para 1, record at 6145; FEAF part 3, record at 6161-6163, 6165-6166, 6170-6175, 6180-6181, 6216-6217.)
The eighth cause of action is therefore denied.
*674 Ninth Cause of Action
The Town’s actions in not identifying certain impacts as moderate to large in its 2015 FEAF part 2, that were identified as such in its 2014 FEAF part 2, are not arbitrary and capricious or an abuse of discretion. The Town started a brand new SEQRA review in 2015, and many new sources of information were considered by the Town in that review, that were not before the Town in 2014. Additionally, Lago made changes in the project after the 2014 review, and before the time the 2015 negative declaration was issued. The Town carefully completed part 2 of the FEAF, considering all impacts identified therein, and was not bound by its findings in part 2 in the 2014 review.
The ninth cause of action is therefore denied.
Tenth and Eleventh Causes of Action
The Town’s review of the casino’s impact on agricultural resources and land was not arbitrary and capricious. The 45 acres of agricultural land taken out of production were appropriately found not to be a significant adverse consequence given the Town’s 8,270 acres of agricultural land. The construction impacts were appropriately addressed in the Town’s SEQRA review as discussed above.
The tenth and eleventh causes of action are therefore denied.
Twelfth through Seventeenth Causes of Action
Upon review of the petitioners’ remaining causes of action, the court concludes that the Town did not act arbitrarily and capriciously, nor did it abuse its discretion in its SEQRA review regarding the project’s environmental impact due to: potential to attract a large number of people to the town for more than a few days; light and odor; traffic and transportation; consistency with community plans; impacts on community character; or combined impacts.
The twelfth through and including the seventeenth causes of action are therefore denied.
Order and Judgment
The proceeding is dismissed, on the merits. The October 1, 2015 determination of the Town to issue a negative declaration as stated in its 2015 negative declaration resolution is confirmed. The Town’s October 15, 2015 resolution approving the development plan for the casino project; the Town’s October 15, 2015 resolution adopting Local Law No. 5 (2015); the Town’s *675 October 22, 2015 resolution approving the site plan; and the Town’s October 22, 2015 resolution accepting the CMP are confirmed to the extent that these resolutions are contingent upon the negative declaration resolution.
Any and all other relief requested by any party not specifically granted herein is in all respects denied.
No costs or disbursements are awarded to either party.

. See also FEAF (part 3 at 1) which instructs the lead agency among other things to “Provide the reason(s) why the impact may, or will not, result in a significant adverse environmental impact.” (Emphasis added.)

. Not New York’s SEQRA process.